## EXHIBIT A

## CAPITAL COMMITMENTS

|  | Capital Commitment | Partnership Percentage |
|---|---|---|
| DOTCOM Investments, LLC<br>3945 Freedom Circle, Suite 740<br>Santa Clara, CA 95054 |  | 1.00% |
| Goel Family Partnership<br>98 Ridgeview Drive<br>Atherton, CA 94027<br>Attn: Prabhakar Goel | $500,000 | 3.3% |
| Saiyed Atiq Raza<br>One AMD Place, MS 360<br>Sunnyvale, CA 94088 | $312,376.24 | 2.06% |
| Marshall G. Cox Trust<br>15720 Glen Una Drive<br>Los Gatos, CA 95030<br>Attn: Marshall Cox | $250,000 | 1.65% |
| Silicon Valley Bancshares<br>3003 Tasman Drive, NC 821<br>Santa Clara, CA 95054<br>Attn: David Jaques | $150,000 | .99% |
| Rainbow Enterprises, L.P.<br>21690 Rainbow Court<br>Cupertino, CA 95014<br>Attn: Prakash Bhalerao | $2,247,524.75 | 14.83% |
| Donald W. Brooks<br>c/o KLM Capital Management, Inc.<br>10 Almaden Boulevard, Suite 988<br>San Jose, CA 95113 | $1,247,524.75 | 8.23% |
| Krishnan Shah Family Limited Partners<br>c/o Lata Krishnan<br>1135 Saguare Court<br>Fremont, CA 94539 | $561,881.19 | 3.71% |

| | | |
|---|---|---|
| Chay Kwong Soon<br>48 Coronation Road West, #03-04<br>Astrid Meadows<br>Singapore 269263 | $623,762.38 | 4.12% |
| RELL Family Partners, Ltd.<br>c/o KLM Capital Management, Inc.<br>10 Almaden Boulevard, Suite 988<br>San Jose, CA 95113 | $187,128.71 | 1.24% |
| Joel D. and Joy G. Kellman<br>Trust UTA June 9, 1981<br>386 Greenoaks Drive<br>Atherton, CA 94027 | $187,128.81 | 1.24% |
| Peter T. and Celeste T. Mok<br>1827 Napa Court<br>Fremont, CA 94539 | $374,257.43 | 2.47% |
| Gary Tseng<br>108, 486 Lane<br>Ming Hu Road<br>Hsinchu, TAIWAN 300 | $1,122,772.28 | 7.41% |
| High Growth Management. Ltd.<br>15th Floor, Bank of East Asia Bldg.<br>10, Des Voeux Road<br>Central Hong Kong<br>Attn: Amy Lo | $124,752.48 | .82% |
| Jerald P. Shaevitz<br>24175 Dawnridge Drive<br>Los Altos Hills, CA 94024 | $74,851.49 | .49% |
| Gary Cheng, et al.<br>c/o Venglobal Capital<br>5201 Great America Parkway<br>Suite 320<br>Santa Clara, CA 95054 | $187,128.71 | 1.24% |
| Jorge Del Calvo<br>c/o Pillsbury Madison & Sutro<br>2550 Hanover Street<br>Palo Alto, CA 94304 | $93,564.36 | .62% |

| | | |
|---|---|---|
| Jonathan Krass<br>28120 Story Hill Lane<br>Los Altos Hills, CA 94020 | $187,128.71 | 1.24% |
| Kaling Lim<br>P.O. Box 633<br>Tangling Post Office<br>Singapore 912422 | $249,504.95 | 1.65% |
| DruTan Investments, Ltd.<br>Attn: Mitch Brooks<br>4516 Seton Center Parkway, #170<br>Austin, TX 78759 | $74,851.49 | .49% |
| Brooks + Brooks Investments, Ltd.<br>Attn: Cindy Brooks<br>35 Hacienda Drive<br>Tiburon, CA 94920 | $74,851.49 | .49% |
| Phil Mak<br>c/o Venglobal Capital<br>5201 Great America Parkway<br>Suite 320<br>Santa Clara, CA 95054 | $187,128.71 | 1.24% |
| Luzon Investments, Ltd.<br>Attn: Samuel Fang<br>9 Ka Fu Close<br>Sheung Shui, N.T.<br>Hong Kong | $623,762.38 | 4.12% |
| Godfrey & Peggy Wang, Trustees<br>FBO The Godfrey & Peggy Fong Trust<br>U/A Dated 8/8/84<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $218,316.83 | 1.44% |
| Chi-Shin Wang, Trustee<br>FBO Orlena Fong U/A Dated 12/23/83<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $31,188.12 | .21% |

| | | |
|---|---|---|
| Chi-Shin Wang, Trustee<br>    FBO Jeffrey Fong U/A Dated 10/14/87<br>12291 Barley Hills Road<br>Los Altos, CA 94024 | $31,188.12 | .21% |
| Chi-Shin Wang, Trustee<br>    FBO Angela Wong U/A Dated 12/23/83<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $31,188.12 | .21% |
| Fullpath Nominees Ltd.<br>Attn: Mr. Alfred R.K.L. Li<br>15th Floor, Century Square<br>1-13 D'Aguilar Street<br>Central Hong Kong | $187,128.71 | 1.24% |
| Bun Bun & Company Ltd.<br>c/o Amy Lo (Prominent Services Ltd.)<br>15/F Bank of East Asia Bldg.<br>10 Des Voeux Rd.<br>Central Hong Kong | $24,950.50 | .16% |
| John M. Sloane<br>10 Island Road<br>Stuart, FL 34996 | $1,322,376.24 | 8.73% |
| Jane C. Sloane<br>10 Island Road<br>Stuart, FL 34996 | $137,227.72 | .91% |
| Margaret E. Sloane<br>8 Parklands<br>Wotton-Under-Edge<br>GLOS GL127LT<br>United Kingdom | $49,900.99 | .33% |
| Janet M. Mills<br>89 Court Orchard<br>Wotton-Under-Edge<br>GLOS GL127EJ<br>United Kingdom | $49,900.99 | .33% |

78258 v1/SH
1_D%01!.DOC

| | | |
|---|---|---|
| Donald Emery<br>c/o ILT, Inc.<br>150 Main Street<br>West Dennis, MA 02670 | $1,871,287.13 | 12.35% |
| John Murphy<br>P.O. Box 751 Main Street<br>Harwich, MA 02645 | $935,643.56 | 6.18% |
| Sada Chidambaram<br>771 Talisman Court<br>Palo Alto, CA 94303 | $71,732.67 | .47% |
| Stephen Hyndman<br>175 Lundys Lane<br>San Francisco, CA 94110 | $46,782.18 | .31% |
| Jose Maria Insener & Lucia Martinez<br>CTRA Canillas A&, ptY, 5-C<br>28043 Madrid<br>SPAIN | $37,425.74 | .25% |
| Henri Jarrat<br>1958 Grey Eagle Street<br>Henderson, NV 89014 | $124,752.48 | .82% |
| Madhav and Shaila Misr<br>233 Eldridge Avenue<br>Mill Valley, CA 94941 | $62,376.24 | .41% |
| Daniel V. Borel<br>CH-1143 APPLES<br>SWITZERLAND | $124,752.48 | .82% |

## EXHIBIT A-1

### INSTRUMENT OF ADMISSION OR INCREASE IN
### COMMITMENT FOR A PREFERRED LIMITED PARTNER

1.  Partnership Name: DOTCOM VENTURES II, L.P.

2.  Date of Agreement of Limited Partnership: _____

3.  Amount of Preferred Limited Partner's Capital

    Contribution: _____

4.  Effective Date of Admission or Increase: _____

5.  Rate of Prioritized Return: _____

The undersigned hereby agrees to become a Preferred Limited Partner in the partnership set forth above pursuant to terms of the above reference Agreement of Limited Partnership and to be bound by and comply with the terms of such Agreement.

The capital contribution to be made by the undersigned as a Preferred Limited Partner shall be the amount set forth on item 3 above. Such capital contribution shall be made, and the undersigned shall be admitted as a Preferred Limited Partner, on the date set forth in item 4 above. The Prioritized Payment payable with respect to such capital contribution shall be at the rate set forth in item 5 above.

This Instrument shall have the same force and effect as if the undersigned parties had executed a counterpart of such Agreement of Limited Partnership. Capitalized terms used in this instrument shall have the respective meanings set forth in the above referenced Agreement of Limited Partnership.

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of

_____.

**PARTNERSHIP:**                                    **PREFERRED LIMITED PARTNER:**

**DOTCOM Ventures, L.P.**

By: AV Management, LLC,                              _____
its General Partner

                                                    By:_____

By:_____                       Title:_____
    Signature of Manager

40524 v3/SH
v9_03!.DOC

## EXHIBIT B

## PARTNER CAPITAL NOTE

$_____                                                    Date: _____

        For value received, the undersigned hereby promises to pay to DOTCOM Ventures, L.P., a California Limited Partnership, at its principal office in Santa Clara, California, without interest, the sum of _____ Dollars ($_____), according to the following terms and conditions:

**1.**    This Note shall become due and payable in full upon the termination of the DOTCOM Ventures, L.P. pursuant to paragraph 11.1 of its Limited Partnership Agreement. This Note may be prepaid at any time by the undersigned without penalty.

**2.**    This Note will be binding upon the undersigned, its representatives, successors, assigns and any subsequent holders of this Note.

**3.**    This Note shall be governed by the laws of the State of California in all respects, including matters of construction, validity and performance.

**4.**    If an action is commenced for collection of this Note, the undersigned agrees to pay collection of this Note, and court costs and reasonable attorney's fees incurred by the holder hereof.

### AV MANAGEMENT, LLC

                    By:    _____
                           Manager

## Exhibit C

$_____                                                    _____, 19__

### PROMISSORY NOTE

For value received, the undersigned hereby promises to pay to _____ (the "Payee"), at the principal office of the Payee, the principal sum of _____ Dollars ($_____), in such coin or currency of the United States of America at the time of payment as is legal tender for the payment of public and private debts, according to the following terms and conditions:

1.      This Note shall bear no interest.

2.      This Note is secured by the pledge of that portion of the undersigned's limited partnership interest in DOTCOM Ventures, L.P., a California limited partnership ("DOTCOM") acquired by the undersigned from Payee (not including that portion of such interest for which the undersigned has made capital contributions).

3.      This Note and that portion of the DOTCOM limited partnership interest pledged to secure it are subject to all of the terms and conditions of a collateral agreement of the same date between Payee and the undersigned, a copy of which agreement is attached hereto.

4.      This Note shall become due and payable on the Date of Dissolution of DOTCOM (as defined in the DOTCOM Limited Partnership Agreement).

5.      Payee by acceptance hereof agrees for itself, its representatives, successors and assigns (1) that neither the undersigned, its partners, nor their executors, successors or assigns shall be personally liable on this Note, it being intended that the undersigned's obligation to pay the principal amount of this Note is included for the sole purpose of establishing the existence of the indebtedness represented hereby; and (2) that in the event of default, the Payee and any successor or assign shall look for payment solely to the portion of the undersigned's DOTCOM limited partnership interest purchased from the Payee (not including that portion of such interest for which the undersigned has made capital contributions), and will not make any claim or institute any action or proceeding against the undersigned, its partners or their heirs, executors, administrators, successors or assigns for the payment of this Note or for any deficiency remaining after application of the partnership interest securing this note, or otherwise; *provided, however*, that nothing herein contained shall be construed (i) to release or impair the right of the Payee to enforce its rights with respect to the limited partnership interest securing this Note or (ii) to preclude the application of such limited partnership interest to the payment of this Note in accordance with its terms.

_____
(Maker)

Accepted:

_____
(Payee)

51860 v3/SH
140k03!.DOC                              1.

### Exhibit D

### SECURITY AGREEMENT

This Agreement made and entered into this _____ day of _____, 19__, by and between _____ ("Pledgor") and _____ ("Pledgee"), sets forth the terms and conditions governing the non-recourse secured note (the "Note") executed this date by Pledgor as payor and Pledgee as payee.

1.      As security for the indebtedness evidenced by the Note, the Pledgor has pledged to the Pledgee that portion of the Pledgor's limited partnership interest in DOTCOM Ventures, L.P., a California limited partnership ("DOTCOM") purchased by Pledgor from Pledgee (not including that portion of such interest for which Pledgor has made capital contributions), which portion is hereinafter referred to as the Collateral. Terms used in this Agreement have the meaning given them in the DOTCOM Limited Partnership Agreement unless the context requires otherwise.

2.      The Pledgor shall retain and have at all times the following rights and obligations with respect to the Collateral:

(a)      **General.** The Pledgor shall retain and have full legal and beneficial ownership of the Collateral and shall have the benefit of any increases and bear the risk of any decreases in the value of the Collateral. The Pledgor shall have the sole right to vote with respect to the Collateral and to receive distributions of Income Items and dividends payable on the Collateral. Any other payments or distributions on, or in respect of, the Collateral, including any distributions of Securities by DOTCOM, and any Securities issued as a result of any stock dividend on any shares pledged hereunder or as a result of any reclassification, stock split or other change in the capital stock of any corporation whose shares are pledged hereunder or as a result of any consolidation or merger of any such corporation with or into another or as a result of any exchange or conversion of any Security which is pledged hereunder, shall be delivered to the Pledgee and otherwise held as part of the Collateral or, in the case of such cash distributions applied as provided in paragraph 2(b). The Pledgor shall pay all taxes or other charges assessable against it upon or with respect to the Collateral or any income or distributions therefrom.

(b)      **Certain Application of Cash.** Any cash received by the Pledgee in respect of a withdrawal of Securities pursuant to paragraph 2(c)(ii) or any cash payment on the Collateral to be paid over to the Pledgee pursuant to paragraph 2(a) shall be forthwith applied in payment of the principal of the Note.

(c)      **Withdrawal of the Collateral:**

(i)      The Pledgor shall have the right at any time to pay in cash to the Pledgee the entire indebtedness evidenced by the Note and to terminate the Pledgee's security interest in the Collateral.

51860 v3/SH
140k03!.DOC                          1.

**(ii)** The Pledgor shall have the right to withdraw any of the Securities included in the Collateral; *provided, however*, that no such partial withdrawal may be made if it would reduce the value of the remaining Collateral below one hundred and thirty-five percent (135%) of the balance of the Note remaining unpaid after any payment made by the Pledgor. The value of the Collateral shall be calculated pursuant to Article 12 of the DOTCOM Limited Partnership Agreement.

**3.** Upon payment of the Note in full, the Pledgee shall endorse the Note as discharged and satisfied in full, and shall execute all such documents as may be necessary to terminate the Pledgee's security interest in the Collateral.

**4.** As holder of the Note and Pledgee of the Collateral, the Pledgee shall have the right, if the Note is not paid or satisfied on the date for payment set forth in the Note, to liquidate the Collateral and to apply the proceeds of such liquidation in payment, in whole or in part, of the indebtedness evidenced by the Note.

**(a)** Any such liquidation may be effected in any reasonable manner, including a sale or sales for cash or an exchange for other Securities of any type of kind, or in any other manner, at a public or private sale, with or without notice of advertisement, as Pledgee may in its sole discretion determine.

**(b)** Any purchaser (other than the Pledgee) of the Collateral at any such sale shall take the same free of any right of redemption and any other right or claim on the part of the undersigned, all of which rights and claims are hereby waived and released.

**(c)** The Pledgee may be the purchaser at such sale but only at the fair market value of the Collateral.

**5.** **(a)** The Collateral shall be held by DOTCOM and, to the extent otherwise distributable to the Pledgor, by the Pledgee, in accord with the terms hereof, to assure performance by the Pledgor of its obligations under the Note. Title to all Collateral shall remain in the Pledgor until such Collateral is liquidated by the Pledgee in accord with the terms hereof. All of the right and interest of Pledgee in the Collateral shall terminate upon payment in full of all indebtedness evidenced by the Note.

**(b)** **Notices:** All notices shall be given in accord with the terms of the DOTCOM Limited Partnership Agreement.

**(c)** **Governing Laws:** This Agreement and the Note shall be governed by the laws of the State of California as applied to agreements made and to be performed in California between California residents.

**(d)** **Arbitration:** Any controversy arising out of or relating to this Agreement or the Note shall be resolved by arbitration in accord with the terms of the DOTCOM Limited Partnership Agreement.

**(e)    Pledgee's Rights:** Pledgee shall not be entitled hereunder to become at any time a substituted Limited Partner of DOTCOM.

_____, 19__.

Pledgor

By _____

Accepted:

Pledgee

By _____

## EXHIBIT E

## PARTNER COST BASIS NOTE

$_____                                                      Date: _____

For value received, the undersigned hereby promises to pay to DOTCOM Ventures, L.P., a limited partnership, at its principal office in Santa Clara, California, without interest, the sum of _____ Dollars ($_____), according to the following terms and conditions:

**1.**    This Note is secured by a pledge of securities described in Schedule A which is attached hereto.

**2.**    This Note and the securities pledged to secure it are subject to all of the terms and conditions of a security agreement of the same date between DOTCOM Ventures, L.P. and the undersigned, a copy of which agreement is attached hereto.

**3.    Date of Payment**: This Note shall become due and payable as follows:

**(a)    In full**: (i) upon termination of the DOTCOM Ventures, L.P. limited partnership pursuant to paragraph 11.1 of that Partnership Agreement or pursuant to Internal Revenue Code Section 708(b)(1)(B); (ii) ten (10) days after the sale by the undersigned of all of the securities listed on Schedule A; or (iii) ninety (90) days after the retirement of the undersigned as a general partner of the General Partner, whichever occurs first.

**(b)    In part**: Pursuant to the provisions of Section 2(b)(2) of the Security Agreement.

**4.    Remedies**. DOTCOM Ventures, L.P., by acceptance hereof, agrees for itself, its representatives, successors and assigns (a) that neither the undersigned, his heirs, executors, administrators nor assigns shall be personally liable on this Note; it being intended that the undersigned's obligations to pay the principal amount of this Note is included for the sole purpose of establishing the existence of the indebtedness represented hereby, and (b) that in the event of default, DOTCOM Ventures, L.P. and any successor or assign shall look for payment solely to the securities listed on Schedule A and will not make a claim or institute any action or proceeding against the undersigned, his heirs, executors, administrators or assigns for the payment of this Note or for any deficiency remaining after application of the securities listed on Schedule A, or otherwise; provided, however, that nothing herein contained shall be construed (i)

to release or impair the indebtedness evidenced by this Note, or the right of DOTCOM Ventures, L.P. to enforce its rights with respect to the securities listed on Schedule A, or (ii) to preclude the application of said securities to the payment of this Note in accord with its terms.

_____
Maker

**ACCEPTED:**

**DOTCOM Ventures, L.P.**

By:   AV Management, LLC,
      its general partner

By:_____
      Manager

### EXHIBIT E-1

### SECURITY AGREEMENT

This Agreement made and entered into this _____ day of _____, 19___, by and between _____ ("Pledgor") and DOTCOM Ventures, L.P. ("Pledgee") sets forth the terms and conditions governing the nonrecourse secured note (the "Note") attached hereto executed this date by the parties to this Agreement.

I.    As security for the indebtedness evidenced by the Note, the Pledgor has pledged to the Pledgee the securities listed in Schedule A which is attached to said Note, which securities are hereinafter referred to as the "collateral".

II.    The Pledgor shall retain and have at all times the following rights and obligations with respect to the collateral:

**A.    General**: The Pledgor shall retain and have full legal beneficial ownership of the collateral and shall have the benefit of any increases and bear the risk of any decreases in the value of the collateral. The Pledgor shall have the sole right to vote with respect to the collateral and to any income therefrom or distribution thereon by payment of interest or dividends or otherwise, subject to the right of the Pledgee to hold, as Pledgee, as dividends payable in securities and all partial and complete liquidating dividends; and shall pay all taxes or other charges assessable against him upon or with respect to such collateral or any income or distributions therefrom.

**B.    Sales of Collateral**: The Pledgor shall have the right at any time to direct the sale of any or all of the collateral, provided that:

**1.**    If all of the collateral is sold, the net proceeds of such sale shall first be used to pay the indebtedness evidenced by the Note, and the balance, if any, shall be paid promptly by the Pledgee to the Pledgor.

**2.**    If only part of the collateral is sold, the Pledgee shall retain in part or full payment of the indebtedness the higher of (i) the amount of the Note which is attributable to the cost of the investment or investments sold, or (ii) that percentage of the net proceeds from such sale which the balance due on the Note before such sale bears to the total value of the securities held as collateral before such sale, valued in accord with paragraph 5.5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P., as amended from time to time.

**C.    Substitution of Collateral**: The Pledgor shall have the right at any time to withdraw all or any part of the collateral provided that he substitutes at the same time other securities as collateral which have a fair market value (determined in accord with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.) at least equal to the fair market value of the collateral being withdrawn.

**D.    Withdrawal of the Collateral:**

**1.**    The Pledgor shall have the right at any time to pay in cash to the Pledgee the entire indebtedness evidenced by the Note and to withdraw all of the collateral concurrently with such payment.

**2.**    The Pledgor shall have the right to withdraw any part of the collateral by paying to the Pledgee an amount equal to the amount of the Note attributable to the securities being withdrawn; provided, however, that no such partial withdrawal may be made if it would reduce the value of the remaining collateral (valued in accord with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.) below one hundred fifty percent (150%) of the balance of the Note remaining unpaid after the payment called for by this Section 2(d)(2).

**E.    Termination**: The Note shall be payable in full upon termination pursuant to Internal Revenue Code Section 708(b)(1)(B).

**III.**    Upon payment of the indebtedness in full, the Pledgee shall endorse the Note as discharged and satisfied in full, and shall return to the Pledgor the remaining collateral, if any.

**IV.**    As holder of the Note and Pledgee of the collateral, DOTCOM Ventures, L.P., shall have the right, if the Note is not paid or satisfied on the date for payment set forth in the Note to liquidate the collateral and to apply the proceeds of such liquidation in payment, in whole or in part, of the indebtedness evidenced by the Note.

**A.**    Any such liquidation may be effected in any manner, including a sale or sales for cash or an exchange for other securities of any type of kind, or in any other manner, at a public or private sale, with or without notice or advertisement, as Pledgee may in its sole discretion determine.

**B.**    The purchaser of any securities at any such sale shall take such securities free of any right of redemption and any other right or claim on the part of the undersigned, all of which rights and claims are hereby waived and released.

**C.**    Pledgee may be the purchaser at such sale but only at the fair market value thereof determined in accordance with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.

**V.**    If at any time while the Note is outstanding the value of the collateral falls below one hundred fifty percent (150%) of the balance of the Note, Pledgee, upon the election of a Majority in Interest of the Partners of DOTCOM Ventures, L.P., may require Pledgor to pledge additional collateral sufficient to bring the aggregate value of the collateral above one hundred fifty percent (150%) of the balance of the Note. If Pledgor fails to pledge such additional collateral within thirty (30) days of a request by Pledgee, Pledgee may liquidate the collateral as provided in Section 5.

## VI.    Miscellaneous Provisions.

**A.    DOTCOM Ventures, L.P., as Pledgee of the Collateral**: The collateral shall be held by DOTCOM Ventures, L.P., as Pledgee, in accord with the terms hereof, to assure performance by the undersigned of his obligations under the Note. Title to all collateral shall remain in the undersigned until such collateral is liquidated by Pledgee in accord with the terms hereof. All of the rights and interest of Pledgee in collateral shall terminate upon payment in full of all indebtedness evidenced by the Note.

**B.    Notices**: All notices shall be given accord with paragraph 18 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.

**C.    Governing Laws**: This Agreement and the Note shall be governed by the laws of the State of California in all respects, including matters of construction, validity and performance.

Kindly indicate your acceptance of the foregoing by signing the two (2) copies hereof in the space indicated and returning one (1) to the undersigned, thereby constituting the foregoing an Agreement among ourselves.

Dated: _____

**ACCEPTED** this ____ day of                    Address:_____

_____, 19___                               _____

**DOTCOM VENTURES, L.P.**

AV Management, LLC,
its general partner

By:_____
        Manager

## EXHIBIT F

## AMENDED AND RESTATED MANAGEMENT SERVICES AGREEMENT

This **AMENDED AND RESTATED MANAGEMENT SERVICES AGREEMENT** ("Agreement") dated as of April 1, 1999 is made by and between **DOTCOM VENTURES, L.P.** (formerly **ASCII VENTURES, L.P.**), a California limited partnership ("the Partnership"), and **ASCII INVESTMENT MANAGEMENT, INC.**, a California corporation (the "Management Company"). The prior Management Services Agreement between the parties is hereby terminated and is of no further force or effect. The parties hereto agree as follows:

1.   **DEFINITIONS.** All capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Partnership's Limited Partnership Agreement.

2.   **MANAGEMENT COMPANY DUTIES**

    **2.1   BUSINESS ACTIVITIES.** The Management Company shall administer and manage the business activities of the Partnership, seek to achieve the objectives and purposes of the Partnership as specified in the Partnership Agreement, and perform such duties assigned to it by the general partner of the Partnership, AV Management, LLC., a California limited liability company (the "General Partner"). The General Partner shall delegate sufficient authority and rights to the Management Company so that it may perform its management duties. The Management Company's duties include, but are not limited to, the following:

        **(1)**   Identifying and investigating investment prospects;

        **(2)**   Making investment recommendations;

        **(3)**   Managing and monitoring investments;

        **(4)**   Recommending dispositions of investments; and

        **(5)**   Maintaining books and records of the Partnership and the General Partner.

    The Management Company agrees to carry out such duties to the best of its abilities, in accordance with the General Partner's instructions, and subject to the provisions and restrictions of the Partnership Agreement.

    **2.2   LIMITATION ON AUTHORITY.** Notwithstanding anything to the contrary in this Agreement, the Management Company and its employees and agents are not authorized to act in the name of or bind the Partnership or the General Partner. The management and operations of the Partnership and the General Partner, including the selection of investments for the Partnership, shall be the ultimate responsibility of the General Partner as provided in the Partnership Agreement.

## 3.    MANAGEMENT COMPANY STAFF

**3.1    THE STAFF.**    The Management Company will maintain a staff, whether of employees or independent contractors, including analysts and consultants trained and experienced in identifying and evaluating the performance of, and providing assistance to technology companies engaged in the research, development, marketing and sales of information technology, software and related markets, including Internet-related technologies.    The Management Company's staff shall be adequate for the performance of the Management Company's duties specified in this Agreement.

**3.2    KEY OFFICERS.**    For purposes of providing services to the Partnership, the key officers of the Management Company will be Sada Chidambaram, President, Chief Executive Officer and Chairman, Stephen Hyndman, Chief Financial Officer, Vice President and Secretary and Pauline Duffy, Treasurer (collectively, "Key Officers"). Each of the Key Officers will devote sufficient business time through the end of the term of the Partnership as is necessary to enable the Partnership to carry out the purpose for which it was formed.

**3.3    THIRD-PARTY ASSISTANCE.**    The Management Company shall arrange for and coordinate the services of other professionals and consultants.

## 4.    MANAGEMENT FEE

**4.1    COMPUTATION OF MANAGEMENT FEE.**

**(a)**    The Management Company shall be compensated on a quarterly basis in advance for services rendered prior to the Termination Date of the Partnership by the payment by the Partnership in cash of a management fee. The management fee shall be payable on the first day of each calendar quarter (each a "Fee Date").

**(b)    (i)**    The management fee payable on each Fee Date which occurs prior to the fifth anniversary of the commencement of the Partnership shall be equal to the sum of (A) the Partnership's Regulatory Capital (as defined in the SBIC Act) as of such Fee Date plus (B) an amount equal to two times Regulatory Capital as of such Fee Date, multiplied by 0.625%,

**(ii)**    The management fee payable on each Fee Date which occurs after the fifth anniversary of the commencement of the Partnership shall be an amount equal to the sum of (A) the Partnership's Regulatory Capital as of such Fee Date and (B) the amount of Outstanding Leverage, multiplied by 0.625.

**(iii)**    Notwithstanding the foregoing,  (A) the management fee for each of the Partnership's first and last quarters shall be proportionately reduced based upon the ratio the number of days in each such period bears to ninety (90) and (B) an additional management fee shall be payable upon the date of admission of any additional Partner to the Partnership to reflect the increased Regulatory Capital calculated as if such Partner were admitted upon the initial formation date of the Partnership.

(c)    The management fee calculated pursuant to subparagraph (b) above shall be reduced by all transaction fees, advisory fees, director's fees, break-up fees and the like received during the immediately preceding quarter by (i) the General Partner (including any employee of the General Partner), (ii) the partners of the General Partner or (iii) the Management Company or its employees, with respect to any entity in which the Partnership has an interest (or proposes to acquire an interest) or with respect to which the General Partner or the Management Company is acting on the Partnership's behalf. Notwithstanding any portion of the foregoing to the contrary, no reduction shall be made pursuant to the immediately preceding sentence as a result of the payment of legal fees and expenses by any entity to the law firm of Fenwick & West. In the event such reduction exceeds the management fee payable for any given period, subsequent period management fees shall be reduced by such excess amount until there has been a full reduction of management fees with respect to amounts described in the foregoing sentence; provided that any balance of fees not offset by the reduction of management fees prior to the dissolution of the Partnership shall be paid over to the Partnership by the Management Company.

**4.2    CONSULTING, ANNUAL, AND DIRECTORS' FEES.** The Management Company, its employees, or Affiliates may receive from Portfolio Companies consulting fees for initiating and arranging transactions, including arranging financing therefor, and annual or directors' fees, including, but not limited to, securities, property or any other form of compensation, for general management advice, reviewing operations and board participation. The Management Company, its employees, or Affiliates shall retain the full amount of any such fees net of expenses. The Partnership will not share in any such amount of compensation or profits, and such amounts shall not offset any portion of the Management Fee.

## 5.    EXCULPATION AND INDEMNIFICATION

**5.1    EXCULPATION.** Subject to any restriction provided for in SBA Annex OP, which is hereby incorporated by reference, neither the Management Company nor its members, employee or affiliates shall be liable to the Partnership or to a Partner for honest mistakes of judgment or for action or inaction taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Partnership or for losses arising out of the negligence, dishonesty or bad faith of any employee or agent of the Management Company, provided that such employee or agent was selected and supervised with reasonable care.

**5.2    INDEMNIFICATION.** Subject to any restriction provided for in SBA Annex OP, which is hereby incorporated by reference, the Partnership will indemnify, out of the assets of the Partnership only, the Management Company, the employees, officers or directors of the Management Company, and their agents to the fullest extent permitted by law and to save and hold them harmless from and in respect of all reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action or demand that arises out of or in any way relates to the Partnership, its properties, business, or affairs, including amounts paid in settlement from such claims, actions or demands; provided, however, that this indemnity shall not extend to conduct not undertaken in good faith to promote the best interests of the Partnership, and to any action that involves fraud, willful misfeasance, gross negligence, recklessness or intentional

wrongdoing.  The expenses incurred by the indemnified party will be advanced by the Partnership if the party undertakes to pay the Partnership back in the event it is ultimately determined that the party shall not be indemnified.

6.      **REPORTS AND PRESENTATIONS**

      6.1      **MONTHLY REPORTS.**  The Management Company shall furnish the Partnership on a monthly basis reports containing such current information as the General Partner may request.

      6.2      **ASSISTANCE IN PREPARING QUARTERLY AND ANNUAL REPORTS.**      The Management Company shall prepare and deliver to the Partnership reports required to be delivered to the limited partners of the Partnership pursuant to its limited partnership agreement, including quarterly financial and operation reports, and the annual report.

7.      **TERM OF AGREEMENT.**  The Management Company shall provide services under this Agreement until the earlier of (i) termination of the Partnership, or (ii) termination by a party to this Agreement with or without cause upon 180 days' prior written notice.

8.      **AMENDMENTS.**  This Agreement can be modified or amended only by a writing signed by the parties hereto.

9.      **GOVERNING LAW.**  This Agreement shall be governed by and construed in accordance with the laws of the State of California.

THE UNDERSIGNED have executed this Amended and Restated Agreement as of the date first above written.

**DOTCOM Ventures, L.P.**

By: AV Management, LLC, its general partner

By: _____

Managing Member

**ASCII Investment Management, Inc.**

By: _____

Sada Chidambaram, President



Exhibit PS

SBA Annex PS, Version 1.3 March 15, 1997

## SBA ANNEX PS
## VERSION 1.3

## PROVISIONS FOR
## PREFERRED LIMITED PARTNERSHIP INTERESTS

## SBA ANNEX OF PROVISIONS FOR
## PARTICIPATING SECURITIES IN THE FORM OF
## PREFERRED LIMITED PARTNERSHIP INTERESTS UNDER
## AN AGREEMENT OF LIMITED PARTNERSHIP
## FOR A SECTION 301(C) LICENSEE

This document has been drafted by the law firm of O'Sullivan Graev & Karabell, in collaboration with the law firms of Pepper, Hamilton & Scheetz and Foley, Hoag & Eliot, the National Association of Small Business Investment Companies, and the Office of the General Counsel of the United States Small Business Administration.

The Small Business Administration does not endorse or approve law firms. The above legend is not an endorsement or approval by the Small Business Administration of any law firm identified therein, and no representation to the contrary by any party is authorized.

# SBA ANNEX PS

## TABLE OF CONTENTS

Page

ARTICLE I    General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
   1.1.    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
   1.2.    Conflict With the SBIC Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
   1.3.    Conflict With Other Provisions of the Agreement . . . . . . . . . . . . . . . . . . . .  4
   1.4.    Effective Date of Incorporated SBIC Act Provisions . . . . . . . . . . . . . . . . . . .  5
   1.5.    Incorporation of this Annex into the Agreement . . . . . . . . . . . . . . . . . . . . .  5

ARTICLE II    Purpose and Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

ARTICLE III    Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
   3.1.    Authority of General Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
   3.2.    Valuation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

ARTICLE IV    Small Business Investment Company Matters . . . . . . . . . . . . . . . . . . . . . . .  7
   4.1.    Provisions Required by the SBIC Act for Issuers of Participating Securities . . . . .  7
   4.2.    Provisions Required by the SBIC Act for Issuers of Debentures . . . . . . . . . . . .  7
   4.3.    Admission of Preferred Limited Partners and Increased Commitments . . . . . . . .  7
   4.4.    Redemption and Withdrawal of Preferred Limited Partners . . . . . . . . . . . . . . .  8
   4.5.    Assignment of Right to Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
   4.6.    Priority of Preferred Limited Partnership Interests on Liquidation . . . . . . . . . .  9
   4.7.    SBA as Third Party Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
   4.8.    Representations of Private Limited Partners. . . . . . . . . . . . . . . . . . . . . . . .  9
   4.9.    Notices With Respect to Representations by Private Limited Partners . . . . . . . .  10

ARTICLE V    Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
   5.1.    Establishment of Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
   5.2.    Times of Allocation to Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . .  11
   5.3.    Allocations to Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

ARTICLE VI    Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
   6.1.    Distributions to Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
   6.2.    Distributions of Portfolio Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
   6.3.    Apportionment of Distributions Among the General Partner and Private
        Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

ARTICLE VII    Partners' Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
   7.1.    Conditions to the Commitments of the General Partner and the Private
        Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
   7.2.    Failure to Make Required Capital Contributions . . . . . . . . . . . . . . . . . . . . .  15
   7.3.    Termination of the Obligation to Contribute Capital . . . . . . . . . . . . . . . . . . .  16

SBA Annex PS, Version 1.3 March 15, 1997

Page

7.4.    Withdrawal by ERISA Regulated Pension Plans . . . . . . . . . . . . . . . . . . . . . .  16
7.5.    Withdrawal by Government Plans Complying with State and Local Law . . . . . . .  16
7.6.    Withdrawal by Government Plans Complying with ERISA . . . . . . . . . . . . . . .  17
7.7.    Withdrawal by Tax Exempt Private Limited Partners . . . . . . . . . . . . . . . . .  17
7.8.    Withdrawal by Registered Investment Companies . . . . . . . . . . . . . . . . . . . .  17
7.9.    Notice and Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

ARTICLE VIII       Dissolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

ARTICLE IX  Audit and Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

ARTICLE X  Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
10.1.   Assignability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
10.2.   Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

EXHIBIT A-1  Instrument of Admission or Increase in
             Commitment for a Preferred Limited Partner

S:\1700\193\11014J.WP   :

-ii-

## SBA ANNEX PS

## ARTICLE I

### General Provisions

1.1.  **Definitions.**  For the purposes of this Annex, the following terms shall have the following meanings:

"Act" shall mean the state statute under which the Partnership is organized.

"Accumulated Prioritized Payments" shall have the meaning set forth in the SBIC Act.

"Adjustments" shall have the meaning set forth in the SBIC Act.

"Agreement" shall mean the agreement of limited partnership of the Partnership to which this Annex is attached and incorporated as a provision thereof. References to the Agreement shall be deemed to include all provisions incorporated in the Agreement by reference.

"Assets" shall mean and include common and preferred stock (including warrants, rights and other options relating thereto or any combination thereof), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds, tangible or intangible, choses in action, and cash, bank deposits and so-called "money market instruments".

"Capital Account" shall mean the account of each Partner that reflects its interest in the Partnership determined in accordance with Article V.

"Closing Capital Account" shall mean, with respect to any fiscal period, the Opening Capital Account of each Partner for such fiscal period after allocations have been made to such Capital Account in accordance with Section 5.3.

"Code" shall mean the Internal Revenue Code of 1986, and the regulations and interpretations thereof promulgated by the Internal Revenue Service, as amended and supplemented from time to time.

"Commitments" shall mean the capital contributions to the Partnership which the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership. The terms of the Commitments of the Preferred Limited Partners shall be as set forth in this Annex; provided, that any Commitment by a Preferred Limited Partner shall include only the amount such Preferred Limited Partner has actually contributed to the Partnership, and shall not include any amount under any agreement by such Preferred Limited Partner or SBA to provide Leverage to the Partnership which has not been contributed to the Partnership. The amounts and terms of the Commitments of the General Partner and the Private Limited Partners shall be as defined in the Agreement.

-1-

"Debentures" shall have the meaning set forth in the SBIC Act.

"Earmarked Assets" shall have the meaning set forth in the SBIC Act.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the regulations and interpretations thereof promulgated by the Department of Labor.

"General Partner" shall mean the general partner or general partners of the Partnership.

"Institutional Investor" shall have the meaning set forth in the SBIC Act.

"Investment Company Act" shall mean the Investment Company Act of 1940, as amended, and the regulations and interpretations thereof promulgated by the Securities and Exchange Commission.

"Leverage" shall have the meaning set forth in the SBIC Act.

"Maximum Tax Liability" shall have the meaning set forth in the SBIC Act.

"Net Losses" shall mean, with respect to any fiscal period, the excess, if any, of:

(i) all expenses and losses incurred during such fiscal period by the Partnership over

(ii) the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources.

For purposes of determining Net Losses:

(A) items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

(B) in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Losses.

"Net Profits" shall mean, with respect to any fiscal period, the excess, if any, of:

(i) the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources over

(ii) all expenses and losses incurred during such fiscal period by the Partnership.

SBA Annex PS, Version 1.3 March 15, 1997

For purposes of determining Net Profits:

      (A)  items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

      (B)  in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Profits.

"Opening Capital Account", with respect to any fiscal period, shall mean:

      (i)  with respect to any Partner admitted during such fiscal period, such Partner's initial capital contribution; and

      (ii)  with respect to any Partner admitted during any prior fiscal period, other than a Partner who has withdrawn as of the last day of the preceding fiscal period, such Partner's Closing Capital Account for the preceding fiscal period.

"Outstanding Leverage" shall mean the total amount of outstanding securities (including, but not limited to, Debentures and Participating Securities) issued by the Partnership which qualify as Leverage and have not been redeemed or repaid for purposes of and as provided in the SBIC Act.

"Participating Security" shall have the meaning set forth in the SBIC Act.

"Partners" shall mean the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any.

"Partnership" shall mean the limited partnership established by the Agreement.

"Portfolio Securities" shall mean Assets which do not constitute (i) securities in which a licensee is permitted under 13 C.F.R. §107.530, as in effect from time to time, to invest funds not invested in Small Concerns (as defined in the SBIC Act) or (ii) cash or bank deposits.

"Preferred Limited Partner" shall mean the SBA, in its capacity as a Preferred Limited Partner, or any other person holding one or more Preferred Limited Partnership Interests in the Partnership.

"Preferred Limited Partnership Interest" shall mean a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Prioritized Payment" shall have the meaning set forth in the SBIC Act.

SBA Annex PS, Version 1.3 March 15, 1997

"Private Capital" shall have the meaning set forth in the SBIC Act.

"Private Limited Partners" shall mean any limited partners of the Partnership, other than any Preferred Limited Partner.

"Profit Participation" shall have the meaning set forth in the SBIC Act.

"Publicly Traded Security" shall mean a Portfolio Security which is Publicly Traded and Marketable as such term is used in the SBIC Act.

"Qualified Nonprivate Funds" shall have the meaning set forth in the SBIC Act.

"Regulatory Capital" shall have the meaning set forth in the SBIC Act.

"Retained Earnings Available for Distribution" shall have the meaning set forth in the SBIC Act.

"SBA" shall mean the United States Small Business Administration.

"SBIC Act" shall mean the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated thereunder by the SBA, as in effect from time to time.

1.2.  **Conflict With the SBIC Act.**  The provisions of this Annex and the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), the provisions of the SBIC Act shall control.

1.3.  **Conflict With Other Provisions of the Agreement.**  The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex. In the event of any conflict between any provision of this Annex and any other provision of the Agreement, the provisions of this Annex shall control.

1.4.  **Effective Date of Incorporated SBIC Act Provisions.**  (a) Subject to Section 1.4(c), any section of this Annex which relates to Participating Securities or Debentures issued by the Partnership and incorporates or refers to a provision of the SBIC Act (including, without limitation, 13 C.F.R. §107.1830 - 107.1850 shall, with respect to the rights of the SBA (or any other holder of any such Participating Security or Debenture) under any such section, as to each Participating Security or Debenture, be deemed to refer to such SBIC Act provision as in effect on the date on which the capital contribution with respect to such Participating Security was made to the Partnership pursuant to Section 4.3 or such Debenture was purchased from the Partnership, as the case may be.

(b)  Notwithstanding Section 1.4(a), the provisions of 13 C.F.R. § 107.1820 incorporated by reference in Section 4.1 shall be deemed to be such provisions as in effect on the date of the first capital contribution to the Partnership with respect to a Participating Security; and the provisions of 13 C.F.R. § 107.1810(i) incorporated by reference in Section 4.2 shall be deemed to be such provisions as in effect on the date the first Debenture is purchased from the Partnership after April 25, 1994. If either

-4-

of 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 is amended subsequent to the date such Section is incorporated in the Agreement pursuant to this Section 1.4(b), then unless the SBA shall otherwise give its written consent, before the Partnership may issue additional Leverage, this Section 1.4(b) must be amended to incorporate the version of either 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 as then in effect, which relates to the Leverage to be issued.

(c) This Section 1.4 applies to the rights of the SBA in its capacity as a holder or guarantor of Preferred Limited Partnership Interests or Debentures. This Section 1.4 shall not be construed to apply to the provisions of the SBIC Act which relate to the regulatory authority of SBA under the SBIC Act over the Partnership as a licensed small business investment company. References to the provisions of the SBIC Act relating to the SBA's regulatory authority shall mean such provisions as in effect from time to time.

**1.5. Incorporation of this Annex into the Agreement.** The Agreement shall contain the following provision evidencing the incorporation of this Annex:

> "The provisions of SBA Annex PS attached to this Agreement are incorporated in this Agreement with the same force and effect as if fully set forth herein."

## ARTICLE II

### Purpose and Powers

The Partnership is being organized solely for the purpose of operating as a small business investment company under the SBIC Act and conducting the activities described under Title III of the SBIC Act, and shall have the powers, responsibilities, and be subject to the limitations, provided in the SBIC Act.

## ARTICLE III

### Management

**3.1. Authority of General Partner.** (a) The management and operation of the Partnership and the formulation of investment policy shall be vested exclusively in the General Partner.

(b) The General Partner shall, so long as it remains the General Partner of the Partnership, comply with the requirements of the SBIC Act, including, without limitation, 13 C.F.R. § 107.160(a) and (b),* as in effect from time to time.

---

\* These regulations describe the number of individuals required and the organizational requirements for the General Partner.

-5-

(c) The Preferred Limited Partners shall take no part in the control or management of the business or affairs of the Partnership nor shall the Preferred Limited Partners have any authority to act for or on behalf of the Partnership except as is specifically permitted by the Agreement.

(d) The Partners acknowledge that, in addition to the rights of the SBA under this Annex and the Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. The Partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner. Actions taken by SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership.

**3.2. Valuation of Assets.** (a) The Partnership shall adopt written guidelines for determining the value of its Assets. Assets held by the Partnership shall be valued by the General Partner in a manner consistent with such written guidelines and the SBIC Act.

(b) To the extent that the SBIC Act requires any Asset held by the Partnership to be valued other than as provided in the Agreement, the General Partner shall value such Asset in such manner as it determines to be consistent with the SBIC Act.

(c) Assets held by the Partnership shall be valued not less often than annually (or more often, as the SBA may require), and shall be valued not less often than semi-annually (or more often, as the SBA may require) at any time that the Partnership has Outstanding Leverage.*

## ARTICLE IV

### Small Business Investment Company Matters

**4.1. Provisions Required by the SBIC Act for Issuers of Participating Securities.**** (a) The provisions of 13 C.F.R. § 107.1820 are hereby incorporated by reference in this Annex as if fully set forth herein.

(b) The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1820 and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1820.

(c) This Section 4.1 shall be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and shall not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

---

\*       See 13 C.F.R. § 107.503(d), which requires valuation of assets on a semi-annual basis if there is outstanding Leverage.

\*\*      This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Participating Securities.

EXHIBIT A-1

## Instrument of Admission or Increase in
## Commitment for a Preferred Limited Partner

1.  Partnership Name: _____
2.  Date of Agreement of Limited Partnership:_____
3.  Amount of Preferred Limited Partner's Capital
    Contribution:_____
4.  Effective Date of Admission or Increase:_____
5.  Rate of Prioritized Return:_____
6.  Payment Dates: February 1, May 1, August 1, November 1 _____
7.  Maturity Date: _____

The undersigned hereby agrees to become a Preferred Limited Partner in the partnership set forth above pursuant to terms of the above referenced Agreement of Limited Partnership and to be bound by and comply with the terms of such Agreement.

The capital contribution to be made by the undersigned as a Preferred Limited Partner shall be the amount set forth on item 3 above. Such capital contribution shall be made, and the undersigned shall be admitted as a Preferred Limited Partner, on the date set forth in item 4 above. The Prioritized Payment payable with respect to such capital contribution shall be at the rate set forth in item 5 above.

**An additional charge of 1% per annum shall be payable to the Preferred Limited Partner under the same terms and conditions as are applicable to the payment of Prioritized Payments.**

This Instrument shall have the same force and effect as if the undersigned parties had executed a counterpart of such Agreement of Limited Partnership. Capitalized terms used in this instrument shall have the respective meanings set forth in the above referenced Agreement of Limited Partnership.

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of
_____, ____.

Partnership:

_____
(Partnership Name)

By:_____
    (Name of General Partner)
By:_____
    (Signature of Officer or General Partner)

Name: _____
Title: _____

Preferred Limited Partner:

_____
U. S. Small Business Administration
(Name of Preferred Limited Partner)

By:_____
    (Signature of Authorized Person)

Name: _____
Title: Associate Administrator for Investment

Address: U.S. Small Business Administration
         Investment Division, 409 Third Street, S.W.
         Washington, DC 20416

(d) Nothing in this Section 4.1 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**4.2.  Provisions Required by the SBIC Act for Issuers of Debentures.** [*] (a) The provisions of 13 C.F.R. § 107.1810(i) are hereby incorporated by reference in this Annex as if fully set forth herein.

(b) The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1810(i) and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1810 (i).

(c) This Section 4.2 shall be in effect at any time that the Partnership has outstanding Debentures, and shall not be in effect at any time that the Partnership does not have outstanding Debentures.

(d) Nothing in this Section 4.2 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**4.3.  Admission of Preferred Limited Partners and Increased Commitments.** The Partnership may, from time to time after the date hereof, admit one or more Preferred Limited Partners under the following terms and conditions:

(a)  Each Preferred Limited Partner shall execute and deliver to the Partnership an instrument in the form attached hereto as Exhibit A-1, or other form satisfactory to the Partnership and the Preferred Limited Partner, evidencing such Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of the Agreement as if such Preferred Limited Partner were an original signatory to the Agreement, and setting forth such Preferred Limited Partner's name, address and Commitment.

(b) Each Preferred Limited Partner shall be admitted to the Partnership as of the date that such instrument is executed by such Preferred Limited Partner and the General Partner. Each Preferred Limited Partner shall pay on the date of its admission to the Partnership, a capital contribution equal to 100% of the amount of its Commitment.

(c)  At the time that any Preferred Limited Partner makes an additional capital contribution to the Partnership it shall execute an instrument as provided in Section 4.3(a) setting forth the amount of such additional capital contribution, and its Commitment shall be increased by the amount of such capital contribution.

**4.4.  Redemption and Withdrawal of Preferred Limited Partners.**  (a) The redemption of the Preferred Limited Partnership Interest of a Preferred Limited Partner for purposes of

---

[*]  This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Debentures.

the SBIC Act shall not cause the withdrawal of such Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed for purposes of the SBIC Act shall remain a Preferred Limited Partner of the Partnership notwithstanding such redemption, until such time as such Preferred Limited Partner is deemed to have withdrawn pursuant to Section 4.4(d).

(b) In the event that any Preferred Limited Partner has not received on a cumulative basis an amount equal to 100% of the original issue price of such Preferred Limited Partner's Preferred Limited Partnership Interest in the Partnership, plus the amount of any Prioritized Payments and Adjustments that are due under the SBIC Act but unpaid with respect to such Preferred Limited Partner's Preferred Limited Partnership Interest, prior to the redemption date of such Preferred Limited Partner's Preferred Limited Partnership Interest for purposes of the SBIC Act, then on such redemption date the Partnership shall distribute such amount to such Preferred Limited Partner as shall be required so that as of such date such Preferred Limited Partner shall have received on a cumulative basis an amount equal to the original issue price plus all Prioritized Payments and Adjustments which are due under the SBIC Act but unpaid with respect to its Preferred Limited Partnership Interest.

(c) If, at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act, the Partnership (i) has not paid all Prioritized Payments and Adjustments in full and (ii) has not sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Prioritized Payments and Adjustments shall continue and payment shall be made as provided in the SBIC Act. The Partnership's obligation to pay Profit Participation with respect to Earmarked Assets shall continue until such time as all Earmarked Assets are disposed of. If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, the obligation to make such payments shall be extinguished.

(d) A Preferred Limited Partner shall be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of such Preferred Limited Partner has been redeemed, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to such Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to such Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in Section 4.4(c).

4.5. **Assignment of Right to Distributions.** A Preferred Limited Partner (including the SBA in its capacity as a Preferred Limited Partner) may assign to a designee (including any trust, or trustee for a trust, established pursuant to the SBIC Act) all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest. Upon receipt of written notice from the Preferred Limited Partner, the Partnership shall pay any such assigned distribution or payment directly to such designee. Any assignment made solely pursuant to this Section 4.5 shall not be deemed an assignment of a partnership interest or the substitution of such designee as a Partner, and shall not be deemed to give such designee any rights or interest in the Partnership as a Partner in the Partnership.

4.6. **Priority of Preferred Limited Partnership Interests on Liquidation.** In the event of the liquidation of the Partnership pursuant to the SBIC Act, the Preferred Limited Partnership Interests shall be senior in priority for all purposes to all other partnership interests (or other equity interests) in

the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.[*]

**4.7. SBA as Third Party Beneficiary.** In the event that the SBA is not a party to the Agreement, the SBA shall be deemed an express third party beneficiary of the provisions of the Agreement (including, without limitation, this Annex) to the extent of the rights of the Preferred Limited Partners and the SBA thereunder and under the Act, and the SBA shall be entitled to enforce such provisions (including, without limitation, the obligations of each Partner to make capital contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if the SBA were a party thereto.

**4.8. Representations of Private Limited Partners.** (a) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that it is an Institutional Investor with respect to the Partnership; provided, however, that in lieu of making this representation, any Private Limited Partner may provide the Partnership with a separate written representation describing its status under the definition of an Institutional Investor.[**]

(b) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that its Commitment qualifies as Private Capital, and none of its Commitment constitutes Qualified Nonprivate Funds whose source is Federal funds; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its Commitment which qualifies as Private Capital and the amount of its Commitment which constitutes Qualified Nonprivate Funds whose source is Federal funds.[***]

(c) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that (i) its net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits equals or exceeds $10 million (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence), (ii) its Commitment to the Partnership represents less than ten percent (10%) of such Private Limited Partner's net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits, and (iii) if such Private Limited Partner is a natural person, such person is a permanent resident of the United States; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its net worth (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence) or net assets available for benefits (in the case of any such employee benefit plan, pension plan or government plan), the percentage of such net worth or net assets available for benefits represented by such Private Limited

---

[*]  13 C.F.R. § 107.1500(f) specifies the amount of the priority of a Preferred Limited Partnership Interest on liquidation.

[**]  See the definition of "Institutional Investor" at 13 C.F.R. § 107.50.

[***]  See the definitions of "Regulatory Capital", "Qualified Nonprivate Funds" and "Leverageable Capital" at 13 C.F.R. § 107.50.

-9-

Partner's Commitment to the Partnership, and the country (if other than the United States) in which such Private Limited Partner is a permanent resident.*

(d) Each Private Limited Partner which directly or indirectly owns or controls a limited partner's interest which constitutes ten percent (10%) or more of the partnership capital (as such term is used in the SBIC Act), represents to the Partnership and each Preferred Limited Partner and the SBA that its Commitment to the Partnership does not (i) constitute thirty-three percent (33%) or more of the partnership capital or (ii) exceed five percent (5%) of such Private Limited Partner's net worth or net assets available for benefits (in the case of any employee benefit, pension plan or government plan); provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the percentage of the partnership capital which the limited partner's interest directly or indirectly owned or controlled by it constitutes, and the percentage of its net worth represented by such limited partner's interest.**

(e) Each Private Limited Partner represents to the Partnership, each Partner and the SBA that such Private Limited Partner has full power and authority to execute and deliver the Agreement and to act as a Private Limited Partner thereunder; the Agreement has been authorized by all necessary actions by it; the Agreement has been duly executed and delivered by it; and the Agreement is a legal, valid and binding obligation of it, enforceable against it according to its terms.

**4.9. Notices With Respect to Representations by Private Limited Partners.** (a) In the event that the representation made by a Private Limited Partner in Section 4.8(a), (b), (c) or (d) shall cease to be true (including any separate written representation previously provided by such Private Limited Partner to the Partnership as provided in such Sections), then such Private Limited Partner shall promptly provide the Partnership with a correct separate written representation as provided in each such Section.

(b) The Partnership shall give each Preferred Limited Partner and the SBA prompt written notice of any notice received from any Private Limited Partner pursuant to Section 4.9(a) with respect to the representations of such Private Limited Partner.

## ARTICLE V

### Capital Accounts

**5.1. Establishment of Capital Accounts.** There shall be established on the books of the Partnership an Opening Capital Account for each Partner in accordance with the definitions and methods of allocation prescribed herein.

**5.2. Times of Allocation to Capital Accounts.** Allocations shall be made to Opening Capital Accounts at (i) the close of each fiscal year of the Partnership, (ii) upon the day prior to the date of the admission of an Additional Private Limited Partner, increase in any Private Limited Partner's

---

*        See the definitions of "Private Capital" and "Regulatory Capital" at 13 C.F.R. § 107.50.

**       See the definition of "Associate" at 13 C.F.R. § 107.50.

-10-

Commitment, admission of any Preferred Limited Partner or increase in the Commitment of any Preferred Limited Partner, (iii) upon the day prior to the dissolution of the Partnership, (iv) upon the date of a distribution and (v) on such other dates as the Agreement may provide. As of the dates set forth in clauses (i) through (v) of the preceding sentence, the allocations shall be made to the Opening Capital Account of each Partner in accordance with Section 5.3.

5.3. **Allocations to Capital Accounts.** (a) As of the times set forth in Section 5.2, allocations shall be made to the Opening Capital Accounts of the Partners to arrive at each Partner's Closing Capital Account for such period in the following order and amounts:

(i) The amount of any capital contributions paid by each Partner during such period shall be credited to such Partner's Opening Capital Account (other than capital contributions referred to in clause (i) of the definition of "Opening Capital Account" in Article I); provided, however, that any such capital contribution shall be credited to such Partner's Opening Capital Account on the later of the date such capital contribution was due or the date on which such capital contribution was actually received by the Partnership;

(ii) The amount of any distributions made to each Partner during such period shall be debited against such Partner's Opening Capital Account;

(iii) Net Profits shall be credited and Net Losses shall be debited to the Opening Capital Accounts of the Preferred Limited Partners in such amount and in such manner as is required to allocate to the Preferred Limited Partners the amount of the Prioritized Payments and Adjustments to which the Preferred Limited Partners are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act;

(iv) The balance of any Net Profits shall be credited and any Net Losses shall be debited to the Opening Capital Accounts of the Partners as follows:

(A) to the Preferred Limited Partners in such amount as is required to allocate to the Preferred Limited Partners the amount of the Profit Participation to which the Preferred Limited Partners (or the SBA) are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act; and

(B) the balance to the General Partner and the Private Limited Partners to be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.

(b) Notwithstanding the provisions of Section 5.3(a)(iv):

(i) at such time as the Capital Account of the General Partner shall be reduced to an amount equal to the aggregate capital contributions of the General Partner (less all distributions to the General Partner), the balance of all Net Losses shall be allocated:

(A) first, to the remaining Capital Accounts of all of the Private Limited Partners which have not been reduced to zero (to be apportioned among them in accordance with their respective Partner's Percentages);

(B) second, after the Capital Accounts of all Private Limited Partners have been reduced to zero, then to the remaining Capital Accounts of the Preferred Limited Partners which have not been reduced to zero (to be apportioned among them according to their respective Capital Accounts); and

(C) third, after the Capital Accounts of all Private Limited Partners and Preferred Limited Partners have been reduced to zero, then the balance to the General Partner.

(ii) In the event that Net Losses are allocated in accordance with the foregoing clause (i), any Net Profits that are required to be allocated after such special allocation of Net Losses as provided in the foregoing clause shall be allocated:

(A) first, to the General Partner until the effect of the special allocation of Net Losses under clause (i)(C) is reversed and eliminated;

(B) second, to all of the Preferred Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(B) until the effect of such special allocation of Net Losses has been reversed and eliminated; and

(C) third, to the Private Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(A) until the effect of such special allocation of Net Losses has been reversed and eliminated.

(c) To the extent not otherwise accomplished by the provisions of Sections 5.3(a) and (b), allocations shall be made to the Opening Capital Accounts of the Partners to effect any allocation of any item of income, gain, loss, deduction or credit to a Partner required by the Code.

## ARTICLE VI

### Distributions

**6.1. Distributions to Partners.** Distributions of cash and/or property (including Portfolio Securities), if any, shall be made at such times as the provisions of the SBIC Act require and at such other times permitted by the SBIC Act as are determined under the Agreement, in the following order and amounts:

---

13 C.F.R. § 107.1520(g) and §§107.1540 through 107.1580 relate specifically to distributions.

-12-

entitled to receive if such distribution were made in cash) with respect to such distribution of each such Portfolio Security.*

(b)  Distributions of Portfolio Securities in kind prior to the redemption of all Preferred Limited Partnership Interests shall only be made if such Portfolio Securities are Publicly Traded Securities.  Distributions in kind of Portfolio Securities which are Earmarked Assets after the redemption of all Preferred Limited Partnership Interests shall be made only (i) if such Portfolio Securities are Publicly Traded Securities or (ii) if such Portfolio Securities are not Publicly Traded Securities, then with the prior written approval of the SBA (which shall include the approval of the valuation of such Portfolio Securities).

(c)  At any time that any amount due to a Preferred Limited Partner whose Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act has not been paid in full, the Partnership shall not make any distribution of Portfolio Securities in kind unless the Partnership distributes to such Preferred Limited Partner such amount, up to the amount of the unrealized appreciation on the Portfolio Securities to be distributed, as may be necessary to pay in full the amounts due to such Preferred Limited Partner pursuant to Section 4.4(c).

**6.3.  Apportionment of Distributions Among the General Partner and Private Limited Partners.**  All amounts to be distributed to the General Partner and the Private Limited Partners shall be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.


## ARTICLE VII

### Partners' Commitments

**7.1.  Conditions to the Commitments of the General Partner and the Private Limited Partners.**  (a)  Notwithstanding any provision in the Agreement to the contrary, the General Partner and the Private Limited Partners shall be obligated to contribute any amount of their respective Commitments, not previously contributed to the Partnership, upon the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of such liquidation if and to the extent that the other Assets of the Partnership have not been sufficient to permit as such time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to the SBA.

(b)  Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 7.1(b)), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act) and prior to the liquidation of the Partnership the SBA requires the

---

*       Distributions of securities are required to be pro rata only between the Preferred Limited Partners and all other Partners as a group (13 C.F.R. § 107.1580(a)(2); the Agreement may permit non-pro rata distributions of securities among the General and Private Limited Partners.

SBA Annex PS, Version 1.3 March 15, 1997

(i) to the Preferred Limited Partners in an amount up to any unpaid Prioritized Payments and Adjustments to which any Preferred Limited Partners are entitled (as determined under the SBIC Act), to be apportioned among them as required by the SBIC Act;

(ii) if all amounts required to be distributed under clause (i) have been distributed, then at the election of the General Partner, to the Partners (whether or not any Partner is a taxpayer or is a tax exempt entity) in an amount up to the Maximum Tax Liability of the Partners, to be apportioned between the Preferred Limited Partners on the one hand and the General Partner and the Private Limited Partners on the other hand as required by the SBIC Act;

(iii) if all amounts required to be distributed under clause (i) and clause (ii) (if the General Partner has elected to make a distribution under clause (ii)) have been distributed, then to the Partners in an amount up to the amount of the Retained Earnings Available for Distribution of the Partnership, to be apportioned among them in the following ratios:

(A) if as of the date of the distribution there is Outstanding Leverage, then in the ratios set forth in the SBIC Act;[*] and

(B) if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iii) shall be apportioned to the Preferred Limited Partners up to the amount of any Profit Participation payable to the Preferred Limited Partners following the redemption of their Preferred Limited Partnership Interests for purposes of the SBIC Act, and the balance shall be apportioned to the General Partner and the Private Limited Partners;

(iv) if all amounts required to be distributed under clauses (i), (ii) (if the General Partner has elected to make a distribution under clause (ii)), and (iii) have been distributed, then any additional amount shall be distributed and apportioned among the Partners in the following ratios:

(A) if as of the date of the distribution there is Outstanding Leverage then in the ratios set forth in the SBIC Act; and

(B) if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iv) shall be distributed one hundred percent (100%) to the General Partner and the Private Limited Partners.

**6.2. Distributions of Portfolio Securities.** (a) Subject to the provisions of the SBIC Act (including, without limitation, 13 C.F.R. § 107.1580) and the provisions of this Section 6.2, the Partnership may, as provided in the Agreement, at any time distribute Portfolio Securities in kind, <u>pro rata</u> between the Preferred Limited Partners on the one hand and the General Partner and Private Limited Partners on the other hand (based upon the respective amounts which each of the two groups would be

---

[*]    13 C.F.R. § 107.1560 sets forth the ratios, which vary depending on the amount of Outstanding Leverage.

-13-

General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) prior to any specified date.

(c)  The provisions of this Section 7.1 shall not apply to the Commitment of any Private Limited Partner whose obligation to make capital contributions has been terminated or who has withdrawn from the Partnership pursuant to a provision of this Article VII or any agreement, release, settlement or action under any provision of the Agreement which has been taken with the consent of the SBA as provided in Section 7.2.  No Private Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset by such Partner or the Partnership against SBA or any Preferred Limited Partner.

7.2.  **Failure to Make Required Capital Contributions**.  (a)  The Partnership shall be entitled to enforce the obligations of each Partner to make the contributions to capital specified in the Agreement, and the Partnership shall have all rights and remedies available at law or equity in the event any such contribution is not so made.*

(b)  The Partnership shall give the SBA prompt written notice of any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement which continues beyond any applicable grace period specified in the Agreement.

(c)  The Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of the Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of the Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written (except as provided in Section 7.2(d)) consent of the SBA.

(d)  If the Partnership has given the SBA thirty (30) days prior written notice of any proposed legal proceeding, arbitration or other action under the provisions of the Agreement with respect to any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement and for which SBA consent is required as provided in Section 7.2(c), and the Partnership shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then SBA shall be deemed to have consented to such proposed Partnership action.

(e)  Section 7.2(c) shall be in effect at any time that the Partnership has Outstanding Leverage or owns Earmarked Assets, and shall not be in effect at any time the Partnership neither has Outstanding Leverage nor owns Earmarked Assets.

---

* See also the rights of the SBA as a third party beneficiary under Section 4.7.

-15-

**7.3.** **Termination of the Obligation to Contribute Capital.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner may elect to terminate its obligation in whole or in part to make a capital contribution required pursuant to the Agreement or upon demand by the General Partner shall no longer be entitled to make such capital contribution, in the event that such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that making such contribution would require such Private Limited Partner to withdraw from the Partnership pursuant to Sections 7.4 through 7.8. Upon receipt by the General Partner of an opinion and notice as required under Section 7.9, unless cured within the period provided under Section 7.10, the Commitment of the Private Limited Partner delivering such opinion shall be deemed to be reduced by the amount of such capital contribution and the Agreement shall be deemed amended to reflect a corresponding reduction of aggregate Commitments to the Partnership.

**7.4.** **Withdrawal by ERISA Regulated Pension Plans.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of ERISA, (i) the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code related to ERISA or (ii) all or any portion of the assets of the Partnership (as opposed to such Private Limited Partner's partnership interest) constitute assets of such Private Limited Partner for purposes of ERISA and are subject to the provisions of ERISA to substantially the same extent as if owned directly by such Private Limited Partner.

**7.5.** **Withdrawal by Government Plans Complying with State and Local Law.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that as a result of state statutes, regulations, case law, administrative interpretations or similar authority applicable to such "government plan", the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation (other than a violation based upon the investment performance of the Partnership) of such applicable state law.

**7.6.** **Withdrawal by Government Plans Complying with ERISA.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, if such "government plan" shall obtain an opinion of counsel to the effect that, as a result ERISA, (i) the withdrawal of such "government plan" from the Partnership to such extent would be required if it were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, to enable such "government plan" to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code

-16-

related to ERISA in the manner which would be required were it an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, or (ii) all or any portion of the assets of the Partnership would constitute assets of such "government plan" for the purposes of ERISA, if such "government plan" were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA and would be subject to the provisions of ERISA to substantially the same extent as if owned directly by such "government plan."

7.7.  **Withdrawal by Tax Exempt Private Limited Partners.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is exempt from taxation under Section 501(a) or 501(c)(3) of the Code may elect to withdraw from the Partnership in whole or in part, if such Private Limited Partner shall obtain an opinion of counsel to the effect that as a result of applicable statutes, regulations, case law, administrative interpretations or similar authority, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such tax exempt Private Limited Partner to avoid loss of its tax exempt status under Section 501(a) or 501(c)(3) of the Code.

7.8.  **Withdrawal by Registered Investment Companies.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "investment company" subject to registration under the Investment Company Act, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of the Investment Company Act, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation of applicable provisions of the Investment Company Act or the requirement that  the Partnership register as an investment company under the Investment Company Act.

7.9.  **Notice and Opinion of Counsel.** In the event of the issuance of an opinion of counsel described in Sections 7.3 through 7.8, a copy of such opinion shall be sent by the General Partner to the SBA, together with the written notice of the election of the Private Limited Partner to which such opinion relates to terminate its obligation to make further capital contributions with respect to its Commitment or withdraw from the Partnership in whole or in part, or the written demand of the General Partner for such termination or withdrawal, as the case may be.  Any counsel rendering an opinion pursuant to Sections 7.3 through 7.8 shall be subject to the approval of the General Partner and the SBA, and any such opinion shall be satisfactory in form and substance to the General Partner and the SBA.

7.10.  **Cure, Termination of Capital Contributions and Withdrawal.** Unless within ninety (90) days after the giving of written notice and satisfactory opinion of counsel, as provided in Section 7.9, the Private Limited Partner or the Partnership eliminates the necessity for termination of the obligation of such Private Limited Partner to make further capital contributions or for the withdrawal of such Private Limited Partner from the Partnership in whole or in part to the reasonable satisfaction of such Private Limited Partner and the General Partner, such Private Limited Partner shall withdraw from the Partnership in whole or in part to the extent required, effective as of the end of such ninety (90) day period.  Subject to the provisions of Section 7.2, in its discretion the General Partner may waive all or any part of the ninety (90) day cure period and cause such termination of capital contributions or withdrawal to be effective at an earlier date as set forth in such waiver.

-17-

**7.11. Distributions on Withdrawal.** Upon withdrawal pursuant to any provision of the Agreement, a Private Limited Partner shall have the rights to distributions set forth in the Act with respect to distributions to be made to limited partners upon withdrawal from a limited partnership; provided, however, that any distribution by the Partnership to a Private Limited Partner pursuant to its withdrawal pursuant to any provision of the Agreement shall be subject to the provisions of the SBIC Act and the prior written consent of the SBA.

## ARTICLE VIII

### Dissolution

The Partnership shall be dissolved on the later to occur of (i) the date of dissolution set forth in the Agreement or (ii) two years after all Preferred Limited Partners have withdrawn from the Partnership and all Outstanding Leverage shall have matured. The Agreement may provide that the General Partner and the Private Limited Partners may elect to dissolve the Partnership at any time after ten (10) years; provided, that (i) all Outstanding Leverage has been repaid or redeemed and (ii) all amounts due the Preferred Limited Partners, SBA, its agent or trustee have been paid.*

## ARTICLE IX

### Audit and Report

The Partnership shall maintain books and records in accordance with Treasury Regulation § 1.704 - 1(b), the provisions of the SBIC Act regarding financial accounts and reporting and generally accepted accounting principles (except as otherwise provided herein), and the financial statements of the Partnership shall be audited and certified as of the end of each fiscal year by a firm of independent certified public accountants selected by the Partnership.

## ARTICLE X

### Miscellaneous

**10.1. Assignability.** (a) The General Partner may not assign, pledge or otherwise grant a security interest in its interest in the Partnership or in this Agreement, except with the prior written consent of the SBA.

---

\*    See 13 C.F.R. § 107.160(c)(1) which specifies the minimum duration for an SBIC in limited partnership form.

-18-

(b) No transfer of any interest in the Partnership shall be allowed if the actions to be taken in connection with such transfer would (i) result in any violation of the SBIC Act,* or (ii) result in a violation of any law, rule or regulation by the Partnership.

**10.2. Amendments.** This Annex shall not be amended except by an instrument in writing executed by all Preferred Limited Partners. Any amendment of the Agreement which would (i) affect this Annex, (ii) affect the rights, obligations or liabilities of any Preferred Limited Partner or the SBA or (iii) reduce the Commitment of any Partner (other than as a result of (A) the operation of any provision of this Annex, (B) an agreement, settlement, release or other action under a provision of the Agreement taken as provided in Section 7.2 or (C) the assignment of such Partner's interest in the Partnership as permitted under this Annex and the Agreement) shall require the prior written consent of the SBA.

---

* See 13 C.F.R. § 107.400 which requires SBA approval for any transfer which would result in any person owning more than a specified percentage of any class of partnership capital.

SBA Annex OP, Version 1.1 March 1, 1996

## SBA ANNEX OP
## VERSION 1.1

### ANNEX OF OPTIONAL PROVISIONS

## SBA ANNEX OF OPTIONAL PROVISIONS FOR
## AN AGREEMENT OF LIMITED PARTNERSHIP
## FOR A SECTION 301(C) LICENSEE

This document has been drafted by the law firm of O'Sullivan Graev & Karabell, in collaboration with the law firms of Pepper, Hamilton & Scheetz and Foley, Hoag & Eliot, the National Association of Small Business Investment Companies, and the Office of the General Counsel Office of the United States Small Business Administration.

The Small Business Administration does not endorse or approve law firms. The above legend is not an endorsement or approval by the Small Business Administration of any law firm identified therein, and no representation to the contrary by any party is authorized.

## SBA ANNEX OP

## TABLE OF CONTENTS

Page

ARTICLE I      General Provisions ............................................ 1
1.1.      Definitions ........................................... 1
1.2.      Conflict with SBIC Act ...................................... 3
1.3.      Conflict With Other Provisions of the Agreement ...................... 3
1.4.      Deletion of Certain Provisions ................................. 3
1.5.      Incorporation of this Annex into the Agreement ...................... 3

ARTICLE II     Remedies for Failure of a Private Limited Partner to Make a Contribution to
           Capital ........................................... 4
2.1.      Interest on Overdue Contributions .............................. 4
2.2.      Termination of Right to Make Further Capital Contributions .............. 4
2.3.      Forfeiture of Interest in the Partnership ........................... 4
2.4.      Withholding and Application of Distributions ........................ 5
2.5.      Required Sale of Interest in the Partnership ........................ 5

ARTICLE III    Small Business Investment Company Matters ......................... 7

ARTICLE IV     Indemnification ............................................. 7
4.1.      Standard of Care ......................................... 7
4.2.      Indemnification ........................................... 8

ARTICLE V      Amendments ............................................... 9

S:\1700\193\11503N.WP

## SBA ANNEX OP

## ARTICLE I

### General Provisions

**1.1. Definitions.**    For the purposes of this Annex, the following terms shall have the following meanings:

"Affiliate" shall have the meaning set forth in the SBIC Act.

"Agreement" shall mean the agreement of limited partnership of the Partnership to which this Annex is attached and incorporated as a provision thereof. References to the Agreement shall be deemed to include all provisions incorporated in the Agreement by reference.

"Assets shall mean and include common and preferred stock (including warrants, rights and other options relating thereto or any combination thereof), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds, tangible or intangible, choses in action, and cash, bank deposits and so-called "money market instruments".

"Assets Under Management" shall mean, as of any specified date, the value of all Assets owned by the Partnership (such value to be determined as provided in the Agreement), including contributions requested and due from Partners and uncalled amounts of Commitments less the amount of any liabilities of the Partnership determined in accordance with generally accepted accounting principles.

"Associate" shall have the meaning set forth in the SBIC Act.

"Capital Account" shall mean the account of each Partner that reflects its interest in the Partnership determined in accordance with Article V of SBA Annex PS (if such Annex is incorporated as part of the Agreement) or as otherwise set forth in the Agreement.

"Commitments" shall mean the capital contributions to the Partnership which the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership. The terms of the Commitments of the Preferred Limited Partners shall be as set forth in SBA Annex PS (if SBA Annex PS is incorporated in the Agreement, or if not then as otherwise set forth in the Agreement); provided, that any Commitment by a Preferred Limited Partner shall include only the amount such Preferred Limited Partner has actually contributed to the Partnership, and shall not include any amount under any agreement by any such Partner or SBA to provide Leverage to the Partnership which has not been contributed to the Partnership. The amounts and terms of the Commitments of the General Partner and the Private Limited Partners shall be as defined in the Agreement.

"Control Person" shall have the meaning set forth in the SBIC Act.

-1-

"General Partner" shall mean the general partner or general partners of the Partnership.

"Investment Advisor/Manager" shall have the meaning set forth in the SBIC Act.

"Leverage" shall have the meaning set forth in the SBIC Act.

"Optionor" shall have the meaning set forth in Section 2.5.

"Optionees" shall have the meaning set forth in Section 2.5.

"Optioned Partnership Interest" shall have the meaning set forth in Section 2.5.

"Option Price" shall have the meaning set forth in Section 2.5.

"Participating Security" shall have the meaning set forth in the SBIC Act.

"Partnership" shall mean the limited partnership established by the Agreement.

"Partners" shall mean the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any, of the Partnership.

"Preferred Limited Partner" shall mean the SBA, in its capacity as a Preferred Limited Partner, or any other person holding one or more Preferred Limited Partnership Interests in the Partnership.

"Preferred Limited Partnership Interest" shall mean a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Private Limited Partners" shall mean any limited partners of the Partnership, other than any Preferred Limited Partner.

"Remaining Portion" shall have the meaning set forth in Section 2.5.

"SBA" shall mean the United States Small Business Administration.

"SBA Annex GDP" shall mean the version of such Annex, if any, which is attached to and incorporated as a part of the Agreement.

"SBA Annex PS" shall mean the version of such Annex, if any, which is attached to and incorporated as a part of the Agreement.

"SBA Annex OP" shall mean the version of this Annex which is attached to and incorporated as a part of the Agreement.

"SBIC Act" shall mean the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated thereunder by the SBA, as in effect from time to time.

-2-

**1.2. Conflict with SBIC Act.** The provisions of this Annex and the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), the provisions of the SBIC Act shall control.

**1.3. Conflict With Other Provisions of the Agreement.** The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex. In the event of any conflict between any provision of this Annex and any other provision of the Agreement (other than the provisions of SBA Annex PS and SBA Annex GDP, if either of such Annexes is incorporated as part of the Agreement), the provisions of this Annex shall control. In the event of any conflict between any provision of this Annex and any provision of SBA Annex PS or SBA Annex GDP, the provisions of SBA Annex PS or SBA Annex GDP (if such Annex is incorporated as part of the Agreement) shall control.

**1.4. Deletion of Certain Provisions.** (a) The specific sections of this Annex identified in clauses (c) and (d) of this Section may be deleted at the option of the Partnership from the form of the Annex that is attached to and incorporated in the Agreement. Blank spaces for periods, interest rates or percentages appearing in any section of this Annex may be filled in by the Partnership or left blank. In the case of any such blank space in a section which is not filled in by the Partnership, the space must be lined through and the period, interest rate or percentage which appears in bold face type immediately before such blank space will apply. References in this Annex to the provisions or sections of this Annex shall refer only to those provisions which have not been so deleted, giving effect to any periods, interest rates or percentages filled in by the Partnership in such sections. The footnote numbers which appear in certain sections and the notes which appear in certain sections and the notes which appear at the end of this Annex are for convenience only and shall neither be considered part of this Annex nor be given any legal effect.

(b) The deletion of any section of this Annex shall be indicated by striking through that Section (note that subsections of an included section may not be deleted).

(c) In Article II, the Partnership may elect to delete any of the Sections.

(d) In Article IV, the Partnership may elect to delete either all sections or Section 4.2; if Section 4.2 is included, Section 4.1 may not be deleted.

**1.5. Incorporation of this Annex into the Agreement.** The Agreement shall contain the following provision evidencing the incorporation of this Annex:

> "The provisions of SBA Annex OP attached to this Agreement are incorporated in this Agreement with the same force and effect as if fully set forth herein."

SBA Annex OP Version 1.1 March 1, 1996

## ARTICLE II

### Remedies for Failure of a Private Limited Partner
### to Make a Contribution to Capital

2.1. <u>Interest on Overdue Contributions</u>. In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) days (unless another period is specified here: _____ (__) days) [1] after the date such contribution is due, then the General Partner may, in its sole discretion, elect to charge such Private Limited Partner interest at an annual rate equal to ten percent (10%) (unless another rate is specified here: _____ ) [2] on the amount due from the date such amount became due until the earlier of (i) the date on which such payment is received by the Partnership or (ii) the date of any notice given to such Private Limited Partner by the General Partner pursuant to Sections 2.3, 2.4 or 2.5. Any distributions to which such Private Limited Partner is entitled shall be reduced by the amount of such interest, and such interest shall be deemed to be income to the Partnership. The amount of interest charged as provided in this Section 2.1 shall not exceed the amount of such Private Limited Partner's Capital Account. [3]

2.2. <u>Termination of Right to Make Further Capital Contributions</u>. In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) (unless another period is specified here: _____ (__)) days after the date such contribution is due, the General Partner may, in its sole discretion (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement), elect to declare, by notice to such Private Limited Partner, that:

(a) Such Private Limited Partner's Commitment shall be deemed to be reduced to the amount of any contributions of capital timely made pursuant to the Agreement; and

(b) Upon such notice (i) such Private Limited Partner shall have no right to make any capital contribution thereafter (including the contribution as to which the default occurred and any contribution otherwise required to be made thereafter pursuant to the terms of the Agreement) and (ii) to this Agreement shall be deemed amended to reflect such reduced Commitment.

2.3. <u>Forfeiture of Interest in the Partnership</u>. In the event that any Private Limited Partner fails to make a contribution required under the Agreement, within thirty (30) (unless another period is specified here: _____ (__)) days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution was due, the General Partner may in its sole discretion (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement) declare, by notice of forfeiture to such Private Limited Partner, that one hundred percent (100%) (unless another percentage is specified here: _____ percent (__%)) of the interest of such Private Limited Partner in the Partnership (including amounts in its Capital Account as well as any interest in future profits, losses or distributions of the Partnership) is forfeited, effective as of the date of such Private Limited Partner's failure to make such required contribution, in which event, as of the date of such notice of forfeiture (i) the Private Limited Partner shall cease to be a Partner with respect to such forfeited interest; <u>provided</u>, <u>however</u>, that such forfeited Private Limited Partner shall cease to have any liability for the payment of the forfeited percentage of any capital contributions due at such time or in the future and (ii) the forfeited percentage of such Private Limited Partner's Capital Account shall be held by the Partnership and reallocated among the Capital Accounts of the Partners one

-4-

percent (1%) (unless another percentage is specified here: _____ percent (__%)) to the General Partner and ninety-nine percent (99%) (unless another percentage is specified here: _____ percent (__%)) to the Private Limited Partners (other than such forfeited Private Limited Partner) to be apportioned among such Private Limited Partners in accordance with their respective aggregate capital contributions. [4]

2.4. **Withholding and Application of Distributions.** No part of any distribution shall be paid to any Private Limited Partner from which there is then due and owing to the Partnership, at the time of such distribution, any amount required to be paid to the Partnership. At the election of the General Partner, which it may make in its sole discretion, the Partnership may either (i) apply all or part of any such withheld distribution in satisfaction of the amount then due to the Partnership from such Private Limited Partner or (ii) withhold such distribution until all amounts then due are paid to the Partnership by such Private Limited Partner. Upon payment of all amounts due to the Partnership (by application of withheld distributions or otherwise), the General Partner shall distribute any unapplied balance of any such withheld distribution to such Private Limited Partner. No interest shall be payable on the amount of any distribution withheld by the Partnership pursuant to this Section.

2.5. **Required Sale of Interest in the Partnership.** In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) (unless another period is specified here: _____ (__)) days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution is due, unless the General Partner has acted pursuant to Sections 2.2 or 2.3 (if either of such Sections are included in the version of this Annex incorporated in the Agreement) the General Partner may, in its sole discretion, (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement) elect to declare such Private Limited Partner in default. If the General Partner so elects to declare such Private Limited Partner in default (such Private Limited Partner being hereinafter referred to as the "Optionor"), then the other Private Limited Partners of the Partnership which are not in default (the "Optionees") and the General Partner shall have the right and option to acquire one hundred percent (100%) (unless another percentage is specified here: _____ percent (__%)) of the Partnership interest, which shall include one hundred percent (100%) (unless another percentage is specified here: _____ percent (__%)) of the Capital Account (the "Optioned Partnership Interest") [5] of the Optionor on the following terms:

(i) The General Partner shall give the Partners notice promptly after declaration of any such default. Such notice shall advise each Optionee of the portion of the Optioned Partnership Interest available to it and the price therefor. The portion available to each Optionee shall be that portion of the Optioned Partnership Interest that bears the same ratio to the Optioned Partnership Interest as each Optionee's capital contributions to the Partnership bears to the aggregate capital contributions to the Partnership, exclusive of the capital contributions to the Partnership of the Optionor. The aggregate price for the Optioned Partnership Interest shall be the assumption of the unpaid Commitment obligation (both that portion then due and amounts due in the future) of the Optionor (the "Option Price"). [5] The Option Price for each Optionee shall be prorated according to the portion of the Optioned Partnership Interest purchased by each such Optionee so that the percentage of the unpaid Commitment assumed by each Optionee is the same as the percentage of the Optioned Partnership Interest purchased by such Optionee. The option granted hereunder shall be exercisable by each Optionee in whole only at any time within thirty (30) days of the date of the notice from the General Partner by the delivery to the General

-5-

Partner of (A) a notice of exercise of option, and (B) the capital contribution due in accordance with clause 2.5(v)(A). The General Partner shall forward the above notices of exercise of option received to the Optionor.

(ii)  Should any Optionee not exercise its option within the period provided in clause (i), the General Partner, within **ten (10)** (unless another period is specified here: _____ (__)) days of the end of such period, shall notify the other Optionees who have previously exercised their options in full, which Optionees shall have the right and option ratably among them to acquire the portion of the Optioned Partnership Interest not so acquired (the "Remaining Portion") within **ten (10)** (unless another period is specified here: _____ (__)) days of the date of the notice specified in this Section 2.5(ii) on the same terms as provided in clause (i).

(iii)  The amount of the Remaining Portion not acquired by the Optionees pursuant to clause (ii) may be acquired by the General Partner within **ten (10)** (unless another period is specified here: _____ (__)) days of the expiration of the period specified in clause (ii) on the same terms as set forth in clause (i).

(iv)  The amount of the Remaining Portion not acquired by the Optionees and the General Partner pursuant to clause (iii) may, if the General Partner deems it in the best interest of the Partnership, be sold to any other corporations, partnerships, individuals or other entities on terms not more favorable to such purchaser than the Optionees' option (and the General Partner may admit any such third party purchaser as a Private Limited Partner, subject to the approval of SBA, if required under the SBIC Act).  Any consideration received by the Partnership for such amount of the Optionor's interest in the Partnership in excess of the Option Price therefor shall be retained by the Partnership and allocated among the Partners' Capital Accounts in proportion to the respective Partners' capital contributions.

(v)  Upon exercise of any option hereunder, such Optionee (or the General Partner, if it has exercised its rights pursuant to clause (iii)) shall be deemed to have assumed that portion of the Optionor's unpaid Commitment representing the Option Price of the purchased portion of the Optioned Partnership Interest and shall be obligated (A) to contribute to the Partnership the portion of the capital contribution then due from the Optionor equal to the percentage of the Optioned Partnership Interest purchased by such Optionee and (B) to pay the same percentage of any further contributions which would have otherwise been due from such Optionor.

(vi)  Upon the purchase by the General Partner of any portion of the Optioned Partnership Interest in the Partnership pursuant to clause (iii), the General Partner shall also become a Private Limited Partner to the extent of such interest.

(vii)  Upon the purchase of any portion of any Optioned Partnership Interest by an Optionee, the General Partner or other person pursuant to this Section 2.5, the Optionor shall have no further rights or obligations under this Agreement with respect to such portion.

(viii)  Upon the purchase of any portion of the Optioned Partnership Interest, for purposes of computing such purchaser's aggregate capital contributions, such purchaser shall be deemed to have aggregate capital contributions (or the aggregate capital contributions of any

-6-

Optionee, shall be increased by an amount) equal to the percentage of the defaulting Private Limited Partner's aggregate capital contribution which the purchased portion of the Optioned Partnership Interest represents of the defaulting Private Limited Partner's entire Partnership interest, and the aggregate capital contributions of such defaulting Private Limited Partner shall be reduced by a corresponding amount.

## ARTICLE III

### Small Business Investment Company Matters

The SBA shall be deemed an express third party beneficiary of the provisions of the Agreement (including, without limitation, this Annex) to the extent of the rights of the SBA thereunder and under the Act, and the SBA shall be entitled to enforce such provisions for its benefit, as if the SBA were a party thereto.

## ARTICLE IV

### Indemnification

4.1.    **Standard of Care.**    (a) Neither the General Partner, any Investment Advisor/Manager nor any partner, shareholder, director, officer or employee nor any Affiliate of any thereof shall be liable to the Partnership or any Partner for any action taken or omitted to be taken by it or any other Partner or other person in good faith and in a manner they reasonably believed to be in or not opposed to the best interests of the Partnership, and, with respect to any criminal action or proceeding, had no reasonable cause to believe their conduct was unlawful.

(b) Neither any Private Limited Partner, nor any member of any Partnership committee or board who is not an Affiliate of the General Partner, shall be liable to the Partnership or any Partner as the result of any decision made in good faith by such Private Limited Partner or member, in his capacity as such.

(c) The General Partner and any Investment Advisor/ Manager, the stockholders, directors, officers, employees and partners of either thereof, any Private Limited Partner and any member of a Partnership committee or board, may consult with reputable legal counsel selected by them and shall be fully protected, and shall incur no liability to the Partnership or any Partner, in acting or refraining to act in good faith in reliance upon the opinion of advice of such counsel.

(d) This Section 4.1 shall not constitute a modification, limitation or waiver of Section 314(b) of the SBIC Act, or a waiver by the SBA of any of its rights pursuant to such Section 314(b).[*]

(e) In addition to the standards of care set forth in this Section 4.1, the Agreement may also provide for additional standards of care which must also be met.

---

[*]     This provision relates to the fiduciary duty of SBIC managers.

4.2. **Indemnification**. (b) The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the General Partner, the general and limited partners of the General Partner, any Investment Advisor/Manager and any partner, shareholder, director, officer, employee or any Affiliate of any thereof from any and all costs, expenses, damages, claims, liabilities, fines and judgments (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by reason of any action taken or omitted to be taken on behalf of the Partnership and in furtherance of its interests.

(b) The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the Private Limited Partners, and members of any Partnership committee or board who are not Affiliates of the General Partner or any Investment Advisor/Manager from any and all costs, expenses, damages, claims, liabilities, fines and judgements (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by any third party on account of any matter or transaction of the Partnership, which matter or transaction occurred during the time that such person has been a Private Limited Partner or such member.

(c) The Partnership shall have power, in the discretion of the General Partner, to agree to indemnify on the same terms as set forth in Section 4.2(b) any person who is or was serving, pursuant to a prior written request from the Partnership, as a consultant to, agent for or representative of the Partnership as a director, officer, employee, agent of or consultant to another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such.

(d) No person shall be entitled to claim any indemnity or reimbursement under Section 4.2(a), (b) or (c) in respect of any cost, expense, damage, liability, claim, fine, judgment (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) that may be incurred by such person which results from the failure of such person to act in accordance with the provisions of this Agreement and the applicable standard of care set forth in Section 4.1. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of _nolo contendere_ or its equivalent, shall not, of itself, preclude a determination that such person acted in accordance with the applicable standard of care set forth in Section 4.1.

(e) To the extent that a person claiming indemnification under Section 4.2(a), (b) or (c) has been successful on the merits in defense of any action, suit or proceeding referred to in Section 4.2(a), (b) or (c) or in defense of any claim, issue or matter therein, such person shall be indemnified with respect to such matter as provided in such Section. Except as provided in the foregoing sentence and as provided in Section 4.2(h) with respect to advance payments, any indemnification under this Section 4.2 shall be paid only upon determination that the person to be indemnified has met the applicable standard of conduct set forth in Section 4.1(a) or (b).

(f) A determination that a person to be indemnified under this Section 4.2 has met the applicable standard set forth in Section 4.1(a) or (b) shall be made by (i) the General Partner, with respect to the indemnification of any person other than a person claiming indemnification under Section 4.2(a), (ii) a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager with respect to indemnification of any person indemnified under Section

-8-

4.2(a) or (iii) at the election of the General Partner, independent legal counsel selected by the General Partner, with respect to the indemnification of any person indemnified under Section 4.2, in a written opinion.

(g)  In making any such determination with respect to indemnification under Section 4.2(f), the General Partner, a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager or independent legal counsel, as the case may be, shall be authorized to make such determination on the basis of its evaluation of the records of the General Partner, the Partnership or any Investment Advisor/Manager to the Partnership and of the statements of the party seeking indemnification with respect to the matter in question and shall not be required to perform any independent investigation in connection with any such determination. Any party making any such determination is authorized, however, in its sole discretion, to take such other actions (including engaging counsel) as it deems advisable in making such determination.

(h)  Expenses incurred by any person in respect of any such costs, expenses, damages, claims, liabilities, fines, and judgments (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) may be paid by the Partnership in advance of the final disposition of any such claim or action upon receipt of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined as provided in Section 4.2(e) or (f) that such person is entitled to be indemnified by the Partnership as authorized in this Section.

(i)  The rights provided by this Section 4.2 shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of each person eligible for indemnification hereunder.

(j)  The rights to indemnification provided in this Section 4.2 shall be the exclusive rights of all Partners to indemnification by the Partnership. No Partner shall enter into, or make any claim under, any other agreement with the Partnership (whether direct or indirect) providing for indemnification. The General Partner shall not enter into any agreement with any person which is an employee, officer, director, partner or shareholder, or an Affiliate, Associate or Control Person of any of the foregoing, providing for indemnification of any such person unless such agreement provides for a determination with respect to such indemnification as provided under Section 4.2(f)(ii) or (iii). The provisions of this Section 4.2 shall not apply to indemnification of any person which is not at the expense (whether in whole or in part) of the Partnership.

(k)  The Partnership may purchase and maintain insurance on its own behalf, or on behalf of any person or entity, with respect to liabilities of the types described in this Section 4.2. The Partnership may purchase such insurance regardless of whether such person is acting in a capacity described in this Section 4.2 or whether the Partnership would have the power to indemnify such person against such liability under the provisions of this Section 4.2.

## ARTICLE V

### Amendments

Any amendment of the Agreement which would affect (i) this Annex, (ii) or the rights, obligations or liabilities of the SBA shall require the prior written consent of the SBA.

-9-

## NOTES

1.    All notice periods are variable.

2.    Any interest rate may be selected.

3.    The limitation on the amount of interest is optional.

4.    Forfeitures may be in whole or in part. The sum of the reallocation percentages to the General Partner and the Private Limited Partner must equal 100%. The elimination of liability after forfeiture is optional; a forfeited limited partner may remain liable for capital contributions. Reallocation of a forfeited interest can be freely determined.

5.    Any percentage of a defaulted limited partner's interest can be sold. A variety of pricing mechanisms can be used: fixed, formula or appraisal.